## IN THE SUPREME COURT OF MISSISSIPPI
### No. 2008-CT-01933-SCT

*PAULA DENHAM AND PAMELA CALDWELL*

*v.*

*ADAM HOLMES, A MINOR BY AND THROUGH DONNIE HOLMES, HIS FATHER & NATURAL GUARDIAN*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 07/28/2008 |
| TRIAL JUDGE: | HON. ANDREW K. HOWORTH |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | TOMMY WAYNE DEFER |
| | BOBBY T. VANCE |
| ATTORNEY FOR APPELLEE: | JOHN BRIAN HYNEMAN |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED. THE JUDGMENT OF THE CIRCUIT COURT OF LAFAYETTE COUNTY IS REVERSED AND THE CASE IS REMANDED - 04/07/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Paula Denham and Pamela Caldwell filed a complaint against Adam Holmes in the Lafayette County Circuit Court. Denham and Caldwell alleged that Holmes had negligently operated his motor vehicle, resulting in an accident in which they were injured. A Lafayette County jury returned a verdict in favor of Holmes, and the circuit court entered a judgment

consistent with the jury verdict. Aggrieved, Denham and Caldwell appealed, and we assigned this case to the Court of Appeals. After the Court of Appeals reversed and remanded for a new trial, Holmes filed a petition for writ of certiorari, which we granted.

¶2. While our disposition of today's case is the same as the Court of Appeals, our reasons differ from the Court of Appeals as to why a reversal of the trial-court judgment is required. We agree with the Court of Appeals that at least one of the jury instructions granted by the trial judge was erroneous. We find, however, that the trial court did not abuse its discretion in failing to admonish the jury to disregard defense counsel's comments during closing arguments regarding the plaintiffs' failure to provide expert testimony to support their claims of Holmes's liability. For purposes of the new trial to be conducted on remand, we likewise address the extent to which the trial court abused its discretion by excluding the plaintiffs' expert witness under *Daubert* and Mississippi Rule of Evidence 702. *See Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶3. For the most part, we present here the Court of Appeals' recitation of the facts. *Denham v. Holmes*, 2010 WL 1037494, at \*1-2 (¶¶4-8) (Miss. Ct. App. Sept. 23, 2010). However, we add certain facts found in the record for the sake of today's discussion. On the day of the accident, Paula Denham was driving her vehicle within or near the corporate limits of Oxford. Denham's vehicle also was occupied by Denham's sister, Pamela Caldwell, who was seated on the front seat-passenger side. Denham was traveling east on the portion of University Avenue which is east of the Highway 7-University Avenue intersection and west

2

of the intersection of University Avenue with Highway 6/278. In this area, University Avenue is a two-lane, paved street, with one lane for east-bound traffic and one lane for west-bound traffic. Denham and Caldwell were traveling to Ken Ash Construction Company (Ash), which is located on the north side of University Avenue, for the purpose of soliciting business for their residential/commercial cleaning service. According to Denham, as she prepared to make a left-hand turn off University Avenue into the Ash parking lot, she engaged her left-hand-turn blinker and came to a complete stop in the east-bound lane to allow three or four west-bound vehicles to pass. Denham stated that, although there was a hill a short distance east of the Ash parking lot, the hill was a sufficient distance away from her location such that she observed all of the vehicles (three or four in number) simultaneously as they approached and traveled past her. As Denham attempted to negotiate the left-hand turn into the Ash parking lot, the front left side of Adam Holmes's truck struck the front passenger side of Denham's car. Denham stated she never saw Holmes's truck coming toward her. Lee Durham was a passenger in Holmes's truck. Before trial, the parties stipulated that certain physical injuries and medical expenses had resulted from the accident.

¶4.     Denham and Caldwell testified that no oncoming traffic was visible when Denham commenced her left-hand turn. Denham testified that the front wheels of her car were in the Ash parking lot when Holmes's truck hit her car, pushing it across both traffic lanes on University Avenue. The car stopped on the roadside opposite the collision with the car's front end completely off the road. Holmes's truck stopped seventy-five feet inside Ash's parking lot. The wreck totaled both vehicles.

3

¶5.    Caldwell testified that an "instant" prior to impact, she saw Holmes's truck. She stated that Holmes was driving "crazy fast" and that she did not have time to warn Denham of the approaching vehicle. Holmes testified that he estimated his speed to be between forty and forty-five miles per hour when Denham turned in front of him. The accident report revealed that Holmes had told officers that he was traveling forty-five miles per hour. Durham testified that Denham's vehicle had abruptly turned left when it was "almost right on them." Holmes testified that he had applied his brakes and had steered to the right to avoid hitting Denham's car. Deputy Shane Theobald with the Lafayette County Sheriff's Department was the investigating officer at the scene. He testified that the speed limit on University Avenue in the area of the accident was forty miles per hour.

¶6.    Before trial, Denham and Caldwell designated Donald Rawson, a traffic-collision reconstructionist, as their expert witness. The parties stipulated that Rawson was properly and timely designated and that he would testify by deposition. The parties also stipulated that Rawson was qualified to give certain expert opinions on the traffic accident.

¶7.    However, at trial, Holmes made an *ore tenus* motion to exclude Rawson's deposition testimony on the basis that it would not aid the jury. Holmes also questioned the reliability of the testimony, noting that Rawson did not view the actual wrecked vehicles or speak with Holmes, Durham, or Deputy Theobald. Holmes argued that Rawson's testimony only

4

reiterated what the police report stated and was unnecessary. **Holmes**, 2010 WL 1037494, at *1-2 (¶¶4-8).[1]

¶8.    Rawson's expert opinion, as provided in his deposition, concluded that Holmes had been speeding and could have avoided the accident. Rawson had viewed the accident report, the accident site, the deposition testimony, and several photographs taken some time after the accident.  The accident report stated that Holmes had estimated his speed to be forty-five miles per hour. Rawson calculated that Holmes's vehicle had been 206 feet from Denham's car when her car had begun to turn, based on the "time it took [Denham] to turn before" the vehicles collided – 3.12 seconds[2] – and Holmes's estimated speed – forty-five miles per hour. Using basic mathematics, Rawson concluded that Holmes's truck, at a constant speed of forty-five miles per hour, traveled the 206 feet in 3.12 seconds.

¶9.    Timing vehicles at the accident scene, Rawson found that a stopped vehicle could cross the opposite lane and completely exit the roadway in 3.62 seconds.  Rawson opined that if Holmes had been driving forty miles per hour and had braked properly, then "he would have slowed down to 31 miles per hour and gone behind [the plaintiff] as she cleared."  This

---

[1]We emphasize that some of the facts we have added were not included in the Court of Appeals' opinion.

[2] Specifically, according to Rawson, Denham's turn took 3.12 seconds such that the front wheels of her car were off the road and in the gravel drive when the collision occurred. In his post-accident visit to the scene, Rawson determined this exact time by timing cars as they turned at the accident site.

opinion also assumed that Holmes had been 206 feet from the point of impact when Denham had commenced her left-hand turn.

¶10.    Importantly, Rawson opined that the lack of skid marks proved that Holmes had not braked, and if he had braked or taken evasive action, then Denham's car could have cleared Holmes's truck in the necessary 3.62 seconds. Moreover, Rawson concluded that, based on the absence of skid marks,  Denham had not been negligent in the operation of her vehicle. He opined that if Denham had created an immediate hazard[3] when turning and, therefore, did not have the right of way, then Holmes would have reacted by braking his truck, thus causing skid marks on the pavement, in an attempt to avoid the collision. Rawson concluded that since no skid marks existed, Denham had not created an immediate hazard and that she had the right of way. Accordingly, Rawson surmised that Holmes had failed to avoid the accident, which was his duty.

---

[3]In Rawson's deposition, he testified that, according to Mississippi's traffic regulations and rules of the road, "if someone is turning and they don't create an immediate hazard, they have the right-of-way." *See* Miss. Code Ann. § 63-3-803 (Rev. 2004) ("The driver of a vehicle within an intersection intending to turn to the left shall yield the right-of-way to any vehicle approaching from the opposite direction, which is within the intersection or so close thereto as to constitute an immediate hazard. However, said driver, having so yielded . . . may make such left turn and the drivers of all other vehicles approaching the intersection from said opposite direction shall yield the right-of-way to the vehicle making the left turn."). *See also* **Baxter v. Rounsaville**, 193 So. 2d 735, 739 (Miss. 1967) ("[T]he law does not require the operator of an automobile traveling at a lawful rate of speed to stop or even to reduce the speed of his vehicle merely because he sees another vehicle on the highway, unless he sees, or by the use of ordinary care should have seen, that the other automobile is in a place of peril . . . .").

¶11. The trial judge read Rawson's deposition and determined that Rawson had not performed a true accident reconstruction; that Rawson's information was unreliable; and that Rawson's conclusions were unnecessary:

> There is no accident reconstruction done here. There's a man who has qualifications as an accident reconstructionist – that's stipulated and accepted – who comes to the scene approximately two years after the accident to determine lines of sight.
>
> Now, is that relevant or can that be relevant and assist the trier of fact for him to offer an opinion on that; and the answer to that is yes.
>
> But an accident reconstructionist's specialized expertise revolves around the reconstruction of the accident; and he didn't reconstruct the accident. He extrapolated some information from a police report and photographs, which are, absent a photographic expert, not suitable evidentiary matters for the reconstruction of an accident.
>
> I don't know that you could do it with a layer of experts, but to calculate speed you have to understand and the reconstructionist has to factor in crush damage to the vehicles. Skid marks are not determined from photographs. I know that much about accident reconstruction, and that's what he purports to do, and his information is not based upon sufficient facts or data, and the testimony is not a product of reliable principles and methods, because none of any significance, other than a couple of mathematical calculations that could have been done by a high school student, were employed in this case, none, no coefficients, no reaction time, none of the things that a true accident reconstruction could use to benefit the jury.
>
> Any conclusions that he has that are accurate and valid, based upon the limited information he had, are certainly subject to be overridden by the confusion associated with the conclusions that he draws based upon insufficient facts and data to arrive at those conclusions, some of which are legal conclusions that he doesn't necessarily need to render because they certainly invade the province of the jury.
>
> I'm of the opinion that pre<u>Daubert</u>, whatever, let it come in. Post<u>Daubert</u> this Court is the gatekeeper of evidentiary matters, particularly expert testimony.

7

I am of the decided opinion that under the <u>Daubert</u> standard that the Court would be committing error to allow this testimony to come in as proffered to the Court, that being the deposition that I have read in full numbered 31 pages.

¶12. The plaintiffs then tried to admit portions of Rawson's deposition pertaining to measurements and distances. The trial court refused this request but allowed plaintiffs' counsel to proffer Rawson's deposition, report, and curriculum vitae as exhibits for identification purposes only. Denham and Caldwell objected to this ruling, and the trial court overruled their objections.

¶13. During closing arguments, defense counsel commented on the plaintiffs' failure to provide expert testimony after plaintiffs' counsel had informed the jury in opening statements that such evidence would be offered. The reason the plaintiffs had not offered expert testimony was due to the trial court's exclusion of such testimony. Plaintiffs' counsel objected and moved for a mistrial. The trial court overruled the objection, denied the motion for a mistrial, and did not admonish the jury to disregard defense counsel's statements. The trial judge also granted jury instructions D-4 and D-9, over the plaintiffs' objections.

**PROCEEDINGS IN THE COURT OF APPEALS**

¶14. Before the Court of Appeals, Denham and Caldwell asserted that the trial court had erred by: "(1) excluding the testimony of their expert witness; (2) allowing Holmes's attorney to make reference during closing arguments to the lack of expert testimony; (3) granting jury instructions D-4 and D-9; (4) denying their motion for a JNOV; and (5) denying their motion for a new trial."

8

¶15. The Court of Appeals reversed the judgment of the Lafayette County Circuit Court, finding that the trial court had abused its discretion by failing to permit the plaintiffs' accident reconstructionist to testify; by failing to instruct the jury to disregard defense counsel's comments during closing argument; and by granting Holmes's proffered jury instructions D-4 and D-9.

¶16. We restate and reorder the assignments of error for the sake of today's discussion.

**DISCUSSION**

**I. WHETHER THE TRIAL COURT ERRED BY GRANTING JURY INSTRUCTIONS D-4 AND D-9.**

¶17. Jury instructions are to be read as a whole. *Bickham v. Grant*, 861 So. 2d 299, 301 (Miss. 2003) (citing *Southland Enters., Inc. v. Newton County*, 838 So. 2d 286, 289 (Miss. 2003)). The trial judge has considerable discretion in instructing the jury. *Id.* A defendant generally is entitled to an instruction which presents his side of the case; however, such instruction must correctly state the law. *Id.* (citing *Southland Enters., Inc.*, 838 So. 2d at 289) (citations omitted)). Furthermore, "[i]t would be error to grant an instruction which is likely to mislead or confuse the jury as to the principles of law applicable to the facts in evidence." *Id.* (citing *Southland Enters., Inc.*, 838 So. 2d at 289); *see also McCary v. Caperton*, 601 So. 2d 866, 869 (Miss. 1992), *overruled on other grounds by Robinson Property Group, L.P. v. Mitchell*, 7 So. 3d 240, 244-45 (Miss. 2009).

¶18. The Court of Appeals found that the trial judge erred when, over objection, he granted jury instructions D-4 and D-9. *Holmes*, 2010 WL 1037494, at *5 (¶¶23-25).

9

¶19.    Instruction D-4 states:

The violation of any posted speed limit or allegations of driving at an excessive speed are only relevant if the plaintiff has shown, from a preponderance of the evidence, that the speed of Adam Holmes was the sole proximate cause or proximate contributing cause to the accident. Unlawful speed is not a proximate cause of an accident caused by the intervening negligence of another person.

Therefore, should you find from a preponderance of the evidence that the motor vehicle accident of July 15, 2004 was the sole proximate cause of the actions of Paula Denham, then any violation of the speed limit or allegations of driving at an excessive speed are irrelevant to your decision.

¶20.    Instruction D-9 states:

When considering who is at fault for an accident, and/or injuries, you may take into account the conduct of those who are not parties to this lawsuit. Although, not a party to this lawsuit, you may consider the actions or omissions of Paula Denham in reaching your verdict.

¶21.    The Court of Appeals held that Instruction D-4 misstated the law of comparative negligence[4] and conflicted with a second jury instruction, D-10, regarding assigning negligence/fault percentages. *Id.* In addition, the Court of Appeals reasoned that Instruction D-9 clearly misstated the facts, because, contrary to the language of the instruction, Denham *was* a party to the lawsuit. *Id.*

¶22.    "Defects in specific instructions do not require reversal 'where all instructions taken as a whole fairly – although not perfectly – announce the applicable primary rules of law.'" ***Richardson v. Norfolk S. Ry. Co.***, 923 So. 2d 1002, 1011 (Miss. 2006) (quoting ***Bradford***

---

[4]"Mississippi is a pure comparative[-]negligence state." ***Coho Res., Inc. v. Chapman***, 913 So. 2d 899, 911 (Miss. 2005) (citing Miss. Code Ann. § 11-7-15 (Rev. 2004)).

*v. Barnett*, 615 So. 2d 580, 583 (Miss. 1993)). Viewing all the jury instructions and considering these instructions as a whole, this Court cannot say that Instruction D-4 "fairly" announced the law. Not only does Instruction D-4 misstate the law, but it conflicts irreconcilably with Instruction D-10.[5]

¶23.   This Court agrees with the Court of Appeals that Instruction D-4 improperly stated that "[u]nlawful speed is not a proximate cause of an accident caused by the intervening negligence of another person." But again, our reasoning in finding fault with this instruction is somewhat different than that of the Court of Appeals.[6] Our problem with this instruction is that the jury was informed that, even if it found that Holmes's speed at the time of the accident was in excess of the posted speed limit, and even if the jury found that this unlawful speed was a proximate cause of the accident, Holmes still could avoid culpability due to the "intervening negligence of another person," for example, Denham. Likewise, contrary to the assertions of Holmes that any confusion caused by the language of the first paragraph of the jury instruction was remedied by the second paragraph of the instruction, we find that, in reading the two paragraphs of Instruction D-4 together as a whole, the second paragraph of the jury instruction only added to the confusion. In the end, we find that Instruction D-4

_____

[5]Instruction D-10 was the familiar form-of-the-verdict instruction based on comparative negligence.

[6]The Court of Appeals stated, in part, that "[a]s it implied contributory negligence, we find that jury instruction D-4 was a misstatement of the law and was potentially misleading to the jury." *Holmes*, 2010 WL 1037494, at *5 (¶23).

11

misstated the law and likely confused and misled the jury, especially in light of Instruction D-10.

¶24. Furthermore, we do agree that, while Instruction D-9 was obviously incorrect in stating that Denham was not a party to the lawsuit, on the other hand, Denham was the driver of the other vehicle in the accident, and the record reveals that counsel for both the plaintiffs and the defendant referred to Denham as the driver during opening statements and closing arguments. Moreover, the trial court provided a form-of-the-verdict instruction, allowing the jury to consider the negligence, if any, of both Holmes and Denham when rendering the verdict. This form-of-the-verdict instruction was consistent with Instruction D-9, which instructed the jury that it could consider the negligence of Denham in reaching a verdict. While permitting the defendant to offer Instruction D-9 was error, the trial court did not commit reversible error in granting this instruction, since it was unlikely to have confused the jury's understanding of the facts in evidence. *Grant*, 861 So. 2d at 301 (citing *Southland Enters., Inc.,* 838 So. 2d at 289) (citations omitted).

¶25. For these reasons, while we agree with the Court of Appeals that the trial court's grant of Instruction D-4 was reversible error, we disagree with the Court of Appeals in its finding that the trial court's grant of Instruction D-9 was likewise reversible error.

> **II.** **WHETHER THE TRIAL COURT ERRED BY NOT INSTRUCTING THE JURY TO DISREGARD DEFENSE COUNSEL'S STATEMENTS DURING CLOSING ARGUMENTS.**

¶26. In opening statements, plaintiffs' counsel had informed the jury that expert testimony would support a finding that Holmes had caused the accident. During closing arguments, after plaintiffs' counsel did not offer any expert testimony because the trial judge had excluded such testimony, defense counsel stated:

> Now they want to talk about property damage and where the vehicle ended up. There's no evidence. There's no evidence here of how fast what causes what property damage, what speeds cause what property damage. The plaintiff, [through counsel], got up and told you that you would hear from the witnesses and you would hear from an experts [sic] get up and testify.

Plaintiffs' counsel objected and moved for a mistrial. The trial court overruled both the objection to the remarks and the motion for a mistrial.

¶27. The Court of Appeals found that the trial judge had committed reversible error in not sustaining the objection and instructing the jury to disregard these comments made by defense counsel. *Holmes*, 2010 WL 1037494, at *4 (¶18). The Court of Appeals reasoned that "Holmes's counsel's comments . . . were not made in furtherance of evaluating the evidence or understanding the law; rather the comments were made to arouse prejudice in the eyes of the jury." *Id.*

¶28. This Court has held that "[t]he test in determining whether a lawyer has made an improper argument which requires reversal is 'whether the natural and probable effect of the improper argument . . . creates an unjust prejudice against the opposing party resulting in a decision influenced by the prejudice so created.'" *Eckman v. Moore*, 876 So. 2d 975, 986 (¶38) (Miss. 2004) (quoting *Davis v. State*, 530 So. 2d 694, 701-02 (Miss. 1988)). Moreover, "[t]he only legitimate purpose of the [closing] argument of counsel in a jury case is to assist

13

the jurors in evaluating the evidence and in understanding the law and in applying it to the facts." ***Shell Oil Co. v. Pou***, 204 So. 2d 155, 157 (Miss. 1967).

¶29.    In ***Clemons v. State***, 320 So. 2d 368,  369 (Miss. 1975), the prosecutors described the evidence – marihuana – as being "the stuff that cause[s] people to drown little babies" and to go crazy. Later, the prosecutor argued that the defense had failed to call certain witnesses because they all were in criminal cahoots and were trying to protect each other. ***Id.*** at 370. In the same argument, the prosecutor pointed to other criminal defendants – in unrelated cases – as "[b]irds of a feather" waiting to be tried for crimes.  ***Id.*** Finding these statements obviously prejudiced the defendant's right to fair trial, this Court reversed and remanded. ***Id.*** at 373.

¶30.    In ***Davis v. State***, 530 So. 2d 694, 701 (Miss. 1988), the prosecutor – in an armed-robbery case –  referred to the incident as being "a heartbeat away from a massacre. . . ." The judge admonished the jury to disregard this statement, and this Court found the prosecutor's statement was harmless.  ***Id.*** at 702.  In ***Roundtree v. State***, 568 So. 2d 1173, 1177 (Miss. 1990), the prosecutor remarked that the people of the county were fed up with waking up in the mornings to news of another body being discovered. The judge admonished the jury to disregard this statement. ***Id.*** at 1178.  This Court found the statements improper but found that the judge's admonishment had cured any prejudicial effect. ***Id.***

¶31.    Recently, in ***Eckman***, the plaintiff stated that the physician defendant thought he was "above the law."  ***Eckman***, 876 So. 2d at 987.  We reiterated that "[t]he only legitimate purpose of the [closing] argument of counsel in a jury case is to assist the jurors in evaluating

14

the evidence and in understanding the law and in applying it to the facts. Appeals to passion or prejudice are always improper and should never be allowed." *Id.* (quoting *Shell Oil Co.*, 204 So. 2d at 157). This Court found that the trial court had erred "in finding that this improper argument did not exceed the bounds of the evidence." *Id.* The plaintiffs' statement had nothing to do with the standard of care at issue. *Id.*

¶32.    In today's case, we agree that defense counsel made the objectionable statements with the intent of being "prejudicial" to the other side's case. The reality of our advocacy system is that the purpose of a party's presentation of evidence and the comments of that party's counsel, throughout the trial, is to aid that party's case, and to "prejudice" (be detrimental to) the other party's case.  As to the objectionable comments made by defense counsel during closing arguments in today's case, these statements, while perhaps prejudicial (detrimental) to the plaintiffs' case, were not "unjust[ly]" prejudicial. *Davis*, 530 So. 2d at 701-02. The plaintiffs, through counsel, had remarked in opening statements that they would introduce expert testimony into evidence; however, based on the trial court's ruling during trial as to the plaintiffs' expert, the plaintiffs failed (were unable) to present this expert testimony. Defense counsel's bringing to the jury's attention this "missing link" in the plaintiffs' evidence most likely harmed the plaintiffs' case. But, acting at their own peril, the plaintiffs invited this comment by informing the jury during opening statements that they would provide expert testimony during the trial but failing to do so. *See Taylor v. State*, 672 So. 2d 1246, 1269 (Miss. 1996) (holding that the State may respond in its closing arguments to defense counsel's failure to follow through on promises of proof to come made during

15

opening statements) ; *Herring v. Poirrier*, 797 So. 2d 797, 804 (Miss. 2000) (holding that plaintiff may not make comments during opening statements and then complain when the opposing party reasonably attempts to respond to them); *Echols v. State*, 759 So. 2d 495, 497-98 (Miss. Ct. App. 2000) (reasoning that defense counsel's remarks during the opening statement and a subsequent lack of supporting evidence "invited the State's remarks in the closing argument"); *Hinton v. Waste Techniques Corp.*, 364 A.2d 724, 728 (Penn. 1976) ("An attorney [in a civil case] cannot promise to prove certain facts to the jury, fail to prove them, and then expect to escape with impunity.").

¶33.    Thus, the Court of Appeals should not have found that defense counsel committed error by identifying a legitimate evidentiary weakness in the plaintiffs' case and rebutting the plaintiffs' opening statements. The facts of this case are distinguishable from cases in which we have found unjust prejudice. For the foregoing reasons, we find the trial judge did not commit error in failing to admonish the jury to disregard these comments made by defense counsel during closing arguments.

### III.    WHETHER THE TRIAL COURT PROPERLY EXCLUDED THE PLAINTIFFS' EXPERT TESTIMONY.

¶34.    "The standard of review for the admission or exclusion of evidence, such as expert testimony, is an abuse of discretion." *Investor Res. Servs., Inc., v. Cato*, 15 So. 3d 412, 416 (Miss. 2010) (citing *Adcock v. Miss. Transp. Comm'n*, 981 So. 2d 942, 946 (Miss. 2008)). This Court will not overturn a trial court's decision on an evidentiary issue unless the trial court abused its discretion, meaning it acted arbitrarily and clearly erroneously. *Hubbard v.*

16

*McDonald's Corp.*, 41 So. 3d 670, 674 (Miss. 2010) (citing *Kilhullen v. Kansas City So. Ry.*, 8 So. 3d 168, 172 (Miss. 2009)). "A trial judge's determination as to whether a witness is qualified to testify as an expert is given the widest possible discretion and that decision will only be disturbed when there has been a clear abuse of discretion." *Worthy v. McNair*, 37 So. 3d 609, 614 (Miss. 2010) (quoting *Sheffield v. Goodwin*, 740 So. 2d 854, 856 (Miss. 1999)).

¶35.    The admissibility of expert testimony is evaluated in light of Mississippi Rule of Evidence 702, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

This rule emphasizes that it is "the gate[-]keeping responsibility of the trial court to determine whether the expert testimony is relevant and reliable." M.R.E. 702 cmt.

¶36.    For expert testimony to be admissible, it must be both relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 592-94, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). "Relevance is established when the expert testimony is sufficiently tied to the facts of the case that it will 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Hubbard*, 41 So. 3d at 675 (quoting *Daubert*, 509 U.S. at 591). To be reliable, "the testimony must be grounded in the methods and procedures of science, not merely a

17

subjective belief or unsupported speculation." ***Worthy***, 37 So. 2d at 615 (citing ***Miss. Transp. Comm'n v. McLemore***, 863 So. 2d 31, 36 (Miss. 2003)) (citations omitted).

¶37.    We have stated that "an expert's testimony is presumptively admissible when relevant and reliable." ***Hubbard***, 41 So. 3d at 675 (quoting ***McLemore***, 863 So. 2d at 39). "The weight and credibility of expert testimony are matters for determination by the trier of fact." ***Id.*** (quoting ***Univ. Med. Ctr. v. Martin***, 994 So. 2d 740, 747 (Miss. 2008)) (citations omitted). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." ***Id.*** (quoting ***McLemore***, 863 So. 2d at 36 (quoting ***Daubert***, 509 U.S. at 596)).

¶38.    Ultimately, if an expert's testimony survives the threshold scrutiny under Rule 702, it is subject to further review under Rule 403. *See* ***Worthy***, 37 So. 3d at 614 (citing ***Daubert***, 509 U.S. at 595) ("The [trial] judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than lay witnesses."). "[E]xpert evidence can be both powerful and quite misleading . . . ." ***Daubert***, 509 U.S. at 595. Accordingly, "lack of reliable support may render [expert testimony] more prejudicial than probative" under Rule 403. ***Viterbo v. Dow Chem. Co.***, 826 F.2d 420, 422 (5th Cir. 1987).

¶39.    Rawson's deposition testimony concluded that, based on basic mathematics and the lack of skid marks, Holmes should have avoided the accident. Specifically, Rawson's deposition testimony concluded that Denham was not negligent and did not create an

18

immediate hazard when turning, because there were no skid marks. Denham and Caldwell argued that the trial court should have admitted this deposition testimony because "several of the jury instructions hinged on the speed of Holmes's vehicle and distance between the vehicles." *Denham*, 2010 WL 1037494, at *3 (¶11).

¶40. The Court of Appeals agreed, finding that Rawson's deposition testimony "was technical in nature and would have assisted the jury in understanding the evidence and determining the facts in issue." *Holmes*, 2010 WL 1037494, at *3 (¶14). The Court of Appeals further found that, because the "testimony was based on the facts available from the accident scene . . . then this testimony should have been admitted." *Id.* And the Court of Appeals reasoned that, because the jury had no expert testimony from which to determine the negligence of the parties, the jury "did not have sufficient information from which to reach a verdict." *Id.*

¶41. In *Hollingsworth v. Bovaird Supply Co.*, 465 So. 2d 311, 315 (Miss. 1985), this Court first held that a properly qualified and examined expert witness could provide testimony on issues of ultimate fact regarding the cause of car wrecks without invading the jury's province – essentially placing accident reconstructionist experts on equal footing with other experts. Under *Daubert*, however, Rawson's testimony must still be both relevant and reliable. *Daubert*, 509 U.S. at 591-2.

### 1. Relevance

¶42. This Court agrees that Rawson's basic mathematics and timing estimates, based on Holmes's professed speed, were relevant. *See Cato*, 15 So. 3d at 418 (discussing the low

threshold for relevant evidence). Both the Court of Appeals and the trial court agreed that Rawson's timing and distance estimates would have assisted the trier of fact.

### 2. Reliability

¶43.    However, contrary to the language in the Court of Appeals' opinion, the mere existence of expert testimony– based on the facts available from an accident scene – does not mean that this testimony, although technical in nature, should be admitted as a matter of course. *See* M.R.E. 702 ("If . . . technical . . . knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness . . . may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data . . . .").

¶44.    Rawson's deposition testimony reveals that Rawson concluded Holmes had been speeding. This opinion is based on Holmes's admitted estimated speed. Based on this estimated speed, Rawson performed some basic mathematical calculations to determine the distance between Holmes's car and Denham's car.[7] He also viewed several photographs and determined no skid marks existed. He then made a second conclusion: that Denham had not been negligent and that Holmes had failed to avoid the accident.  Rawson reasoned that, based on the lack of skid marks, Holmes had not attempted to avoid the accident:

> [Defense Attorney]: If I understand it right, traveling at -- in excess of the speed limit was -- the basis of your opinion was simply the 45 miles per hour written on the police report.

---

[7] Rawson indicated in his report that no physical evidence permitted him to test Holmes's speed.

[Rawson]: That's correct.
[Defense Attorney]: Nothing else?
[Rawson]: Nothing else.
[Defense Attorney]: The failure to take appropriate action – and when you say that, are you saying to avoid the accident?
[Rawson]: Yes, sir.
[Defense Attorney]: Okay. Failure to take appropriate action to avoid the accident, it is simply by no evidence of skidding, no skidmarks on the pavement?
[Rawson]: That's correct.

Rawson could not perform any tests to confirm or disprove Holmes's estimated constant speed of forty-five miles per hour.[8] As the Court of Appeals acknowledged, little physical evidence in this case lent itself to expert analysis in the field of accident reconstruction to aid the jury.

¶45. Reviewing Rawson's conclusions based on the limited evidence in this case, we cannot say the trial judge abused his discretion in finding this deposition testimony to be unreliable as expert testimony with regard to Rawson's ultimate conclusion concerning causation and avoidance. But we agree with the Court of Appeals to the extent that the trial court should have permitted Rawson to offer his timing and distance estimates to aid the jury.

### A. Timing & Distance Estimates

¶46. Rawson's ultimate conclusion – that Holmes should have avoided the accident – assumed that Holmes's estimated speed was correct and further assumed that Holmes had constantly maintained his estimated rate of speed until impact.

---

[8]At trial, Holmes testified that he had told police that he estimated his speed to have been between forty and forty-five miles per hour. He also testified that he had slowed to thirty miles per hour when Denham's car had turned into his lane.

¶47.    Rawson's testimony hinges on precise timing – the difference between 3.12 seconds and 3.62 seconds.  If these assumptions were incorrect, then Holmes would not have been 206 feet away from the plaintiff's car when it began to turn. Consequently, his conclusions regarding accident avoidance and the fact that Denham did not create an immediate hazard most likely would have been altered.

¶48.    Evidentiary weaknesses stemming from a lack of physical evidence in the plaintiffs' case should not induce the introduction of unreliable expert testimony. *See* M.R.E. 702. Generally, however, when expert opinion is based on reliable methodology, the facts as applied in the methodology are a credibility determination for the jury. *See **Treasure Bay Corp. v. Ricard***, 967 So. 2d 1235, 1240 (Miss. 2007).  Here, Rawson relied on basic mathematics – an obviously reliable methodology – to create his timing and distance estimates. In reaching his conclusions, Rawson applied facts in the record, including Holmes's estimated speed of forty-five miles per hour.

¶49.    While Rawson's timing and distance estimates arguably were shaky, the credibility of this portion of Rawson's deposition was an issue for the trier of fact. *See **id.*** ("[E]xperts in many fields, including medicine, accident reconstruction and forensic pathology, frequently rely on histories provided by patients and witnesses."); *see also **Hubbard***, 41 So. 3d at 675 (quoting ***McLemore***, 863 So. 2d at 36 (quoting ***Daubert***, 509 U.S. at 596)) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

¶50.    Moreover, although the trial judge expressed concern over whether Rawson had performed a true accident reconstruction, this Court finds that Rawson's testimony regarding his timing and distance estimates, based on common mathematics, did constitute expert testimony in the field of accident reconstruction.  Although jurors could have performed Rawson's common calculations, Rawson collected data from the accident using his specialized knowledge. He measured sight distances, timed cars, and determined the location of the accident from the available evidence. He interpreted this evidence and, ultimately, based on this limited evidence, he reached conclusions about causation and avoidance.  As applied mathematically and at the accident site, Rawson's expert analysis and methods regarding timing and distance estimates, were beyond the average juror's "common knowledge" and should have been presented to the jury. *Palmer v. Biloxi Reg'l Med. Ctr., Inc.*, 564 So. 2d 1346, 1355 (Miss. 1990); *Smith v. Ameristar Casino Vicksburg*, *Inc.*, 991 So. 2d 1228, 1230 (Miss. Ct. App. 2008); *see also* 9 Am. Jur. 3d *Proof of Facts* § 115, 4 (2010) (Trial court should admit expert testimony if relying on the "'knowledge and application of principles of physics, engineering, and other sciences [is] beyond the ken of the average juror.'").

### B. Lack of Skid Marks

¶51.    Under *Daubert*, all of Rawson's relevant conclusions, however, must have been sufficiently reliable. We find that Rawson's ultimate conclusion regarding causation and avoidance was not sufficiently reliable. Based on the lack of skid marks, Rawson concluded that Denham had not negligently caused an immediate hazard when she had turned in front

23

of Holmes. Rawson reasoned that if Denham had caused an immediate hazard, then Holmes would have applied his brakes and left skid marks or swerve marks. And since no skid marks existed, according to Rawson, Denham could not have been negligent.

¶52. But other than speaking generally about creating immediate hazards and pointing to the lack of skid marks, Rawson's deposition testimony never clearly explained under the limited physical evidence why skid marks were required for a finding that Holmes had attempted to avoid the accident:

> [Defense Attorney]: Now, we can agree that in the general course of traffic, disregarding the events of this accident, in the general course of traffic, vehicles not turning left and in clear sight, they would have the right-of-way to vehicles turning left on the eastbound lane?
> [Rawson]: Unless they created an immediate hazard?
> . . . .
> [Defense Attorney]: Okay. So in this case, Ms. Denham created an immediate hazard?
> [Rawson]: No, she didn't.
> [Defense Attorney]: And so in this case, if she didn't create an immediate hazard, then how does Mr. Holmes not have the right-of-way?
> [Rawson]: He didn't attempt to avoid the accident.
> [Defense Attorney]: Okay. And if I'm clear – I'm not clear. Can you state that again?
> [Rawson]: Had she created an immediate hazard, **she would have caused him to respond by locking his brakes or swerving left or right to take immediate evasive action.** She did not. She made her turn in sufficient time for him to have slowed by normal brake and still avoid the accident.
> [Defense Attorney]: Okay. And how does that situation – how does that eliminate his right-of-way?
> [Rawson]: Well, the law says if someone is turning and they don't create an immediate hazard, they have the right-of-way.
> . . . .
> [Defense Attorney]: And is that the basis of your opinion that Ms. Denham held no negligence, is the fact that the rules of the road state that when a vehicle is turning left and turns – I'm sorry. I just – if you can state that for me again so I'm clear.

24

[Rawson]: Okay. If the vehicle that makes a left turn across traffic does not create an immediate hazard, the oncoming traffic has to yield to him or her.
[Defense Attorney]: So if you make a left turn across oncoming traffic, the oncoming traffic then has the duty to yield to you?
[Rawson]: Yes, sir.
[Defense Attorney]: Which, I guess, would be the basis for your opinion that he should have avoided the accident?
[Rawson]: Yes, sir.

(Emphasis added.) Based simply on the absence of skid marks, Rawson concluded that Denham had not been negligent and that Denham had the right of way. Rawson also concluded that Holmes had not attempted to avoid the accident.[9]

¶53. Even though "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence[,]" this Court cannot say that the trial judge acted arbitrarily by finding that Rawson's ultimate conclusion regarding causation and avoidance did not satisfy *Daubert's* reliability standard. *Hubbard*, 41 So. 3d at 675 (quoting *McLemore*, 863 So. 2d at 36 (quoting *Daubert*, 509 U.S. at 596)). "[N]othing in . . . *Daubert* . . . requires a . . . court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Watts v. Radiator Specialty Co.*, 990 So. 2d 143, 149 (Miss. 2008).

---

[9]On the other hand, Holmes testified that, once Denham had pulled in front of him, he slowed his truck to a speed of thirty miles per hour in an effort to avoid the accident.

¶54. While this Court has allowed, when appropriate, an accident reconstructionist to opine as to ultimate conclusions regarding causation, Rawson's ultimate conclusion as articulated in his deposition testimony, based on the lack of skid marks, contained an obvious "analytical gap." Therefore, we cannot say that the trial judge abused his discretion in excluding this testimony. Simply stated, Rawson failed to connect the dots between the skid marks and the existing physical evidence; thus, as found by the trial judge, his conclusion regarding causation was unreliable.

¶55. Moreover, Rawson's conclusion regarding whether Denham had created an immediate hazard was not based on specialized, technical, or scientific knowledge. *See* M.R.E. 702 (requiring "scientific, technical, [or] specialized knowledge"). As previously mentioned, Rawson opined that, because no skid marks were present in the black-and-white photographs, Holmes did not attempt to avoid the accident, although he had a duty to do so. However, Holmes testified that he did brake to avoid the accident, probably slowed to thirty miles per hour, and sought to circumvent Denham's car in the gravel lot off the highway where the collision occurred. Durham, Holmes's passenger, stated that Denham's vehicle had pulled in front of Holmes's truck at the last second. On the other hand, Denham and Caldwell testified that they never saw Holmes's truck approaching, and that he must have been driving "crazy fast."

¶56. Without clearly tying the physical evidence to the lack of skid marks, Rawson's speculation "on the implication of the lack of skid marks would not have been superior to a conclusion a jury could [have drawn] for themselves" and, therefore, was not necessary. *See*

26

*Garnett v. Gov't Employees Ins. Co.*, 186 P.3d 935, 946 (Okla. 2008); *Palmer*, 564 So. 2d at 1355 (Miss. 1990) ("Expert testimony is required unless the matter in issue is within the common knowledge of laymen."); *Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052, 1055 (4th Cir. 1986) ("[E]xpert testimony is unnecessary . . . when ordinary experience would render the jury competent to decide the issue.").

¶57.   "A trial judge's determination as to whether a witness is qualified to testify as an expert is given the widest possible discretion . . . ." *Worthy*, 37 So. 3d at 614 (quoting *Univ. of Miss. Med. Ctr. v. Pounders*, 970 So. 2d 141, 146 (Miss. 2007)). Viewing Rawson's deposition testimony in its entirety, we find that the trial judge did not abuse his discretion by not allowing into evidence expert testimony that was clearly speculative and based on insufficient data.  But the trial court did abuse its discretion by not permitting the jury to weigh the credibility of Rawson's distance and timing estimates, which largely were based on facts in the record and would have aided the jury.

**CONCLUSION**

¶58.   We agree with the Court of Appeals' finding that the trial judge erred by granting Instruction D-4, but we disagree with the Court of Appeals' finding that the trial judge erred in granting Instruction D-9. We disagree with the Court of Appeals' finding that the trial judge committed error by not instructing the jury to ignore defense counsel's comments during closing arguments concerning the plaintiffs' inability to provide expert testimony. Defense counsel's statements did not unjustly prejudice the plaintiffs.  Finally, we agree in part and disagree in part with the Court of Appeals' finding that the trial judge erroneously

27

excluded the testimony of the plaintiffs' expert. In viewing the entirety of Rawson's deposition testimony, we find that the learned trial judge did not err in performing his role as gatekeeper under Mississippi Rule of Evidence 702 and **Daubert** regarding Rawson's ultimate conclusions. But we likewise are constrained to find that the trial judge abused his discretion in disallowing Rawson's testimony concerning timing and distance estimates.

¶59. In sum, based on today's discussion, we affirm the judgment of the Court of Appeals, although for different reasons, and we reverse the trial-court judgment and remand this case to the Circuit Court of Lafayette County for further proceedings consistent with this opinion.

¶60. **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED. THE JUDGMENT OF THE CIRCUIT COURT OF LAFAYETTE COUNTY IS REVERSED AND THE CASE IS REMANDED.**

**WALLER, C.J., LAMAR, CHANDLER AND PIERCE, JJ., CONCUR. KITCHENS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., AND RANDOLPH, J. KING, J., NOT PARTICIPATING.**

**KITCHENS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶61. I disagree with the majority's finding that the trial court did not abuse its discretion in excluding Donald Rawson's expert testimony regarding the lack of skid marks, as they related to causation and avoidance of the accident.[10] In all other respects, I concur with the majority.

---

[10]Rawson's qualifications as an expert in accident reconstruction have not been challenged.

28

¶62. I agree with the majority's summary of the ***Daubert*** standard; however, I disagree with its conclusion that Rawson's opinion, as it related to the lack of skid marks, was unreliable and inadmissible. *See **Daubert v. Merrell Dow Pharm., Inc.***, 509 U.S. 579, 592-94, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

¶63. Mississippi Rule of Evidence 702 provides:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

"Rule 702 seeks to encourage the use of expert testimony in non-opinion form when counsel believes the trier [of fact] can draw the requisite inference." Miss. R. Evid. 702 cmt. Additionally, it is possible for an expert to suggest the inference which should be drawn from applying his specialized knowledge to the facts. *Id.* Moreover, "[t]his Court has permitted the testimony of qualified accident reconstruction experts to give opinions on how an accident happened, the point of impact, the angle of travel, the responsibility of the parties involved, and the interpretation of photographs." ***Fielder v. Magnolia Beverage Co.***, 757 So. 2d 925, 937-38 (Miss. 1999) (citing ***Miller v. Stiglet, Inc.***, 523 So. 2d 55 (Miss. 1988); ***Hollingsworth v. Bovaird Supply Co.***, 465 So. 2d 311 (Miss. 1985)).

¶64. "It is not necessary that one offering to testify as an expert be infallible or possess the highest degree of skill; it is sufficient if that person possesses peculiar knowledge or information regarding the relevant subject matter which is not likely to be possessed by a

29

layman." ***Hooten v. State***, 492 So. 2d 948, 948 (Miss. 1986) (citing ***Henry v. State***, 484 So. 2d 1012 (Miss. 1986)). In this case, Rawson had been employed with the Mississippi Highway Safety Patrol since 1968, and, over the course of his employment and training, he had become an expert in the field of accident reconstruction, which had led to his teaching and publishing literature in that field. Clearly, Rawson possessed particular knowledge and information regarding accident reconstruction that laypersons usually do not have.

¶65. In his deposition, Rawson concluded that Holmes had been traveling in excess of the posted speed limit and that he had failed to take appropriate evasive action to avoid the accident. Rawson's report provided an explanation for each of his findings. Specifically, Rawson's report said that:

1. The Pontiac stopped eastbound on University Ave[.] to initiate a left turn into a private drive. This opinion is based upon my review of the Crash Report filed by the Sheriff's office.
2. As the Pontiac was making a left turn it was struck in the front right side by the front left of the westbound Chevrolet PU. This opinion is based on my observation of the scene and vehicle photos as well as plaintiff's statements.
3. The Area of Impact was located at the north edge of University Ave[.] and the middle of the private drive. This opinion is a result of my observation of a photo depicting a tire scuff in the gravel area.
4. The impact rotated the Pontiac counterclockwise causing a secondary collision of the Pontiac rear right side with the rear left side of the Chevrolet PU. Opinion based on the photos showing the secondary damage.
5. There was no skid marks prior to impact. Opinion is based on the absence of skid marks in the photos.
6. The Pontiac was able to accelerate to the impact in 3.13 seconds before being hit and could have cleared the westbound lane in 3.62 seconds. This opinion was based on timed cars making a left turn at the collision site.

7. The PU was approximately 206 feet from impact with a clear view of the scene when the Pontiac entered his lane. This opinion is based on the Crash Report in which the Chevrolet PU driver estimated his speed at 45 mph, opinion #6 and my observations at the scene.

8. The speed of the PU was 45 miles per hour on impact. Opinion based on the estimated speed of the PU driver and the absence of skid marks.

9. There is not a method to determine speed of the vehicle's speed using physical evidence. This opinion is based on the use of *conservation of linear momentum* normally used in the case to determine speeds, but necessary data is not available because:

   a. The site has been altered due to construction in the post impact areas.

   b. The secondary collision has some input in speed and direction.

10. Using the posted speed limit of 40 mph, the PU could have reacted to the car turning and applied normal braking and the Pontiac would not create an immediate hazard. This would have allowed the PU to slow to 31 mph and would have allowed the car to clear the lane in the 3.62 seconds required because he would arrive at the area of impact 3.72 seconds after perception. This opinion is a calculated value using the speed limit of 40 mph, the normal braking value and the standard perception-reaction time.

11. From the speed of 40 mph (posted speed limit). The driver could have stopped the PU in 194 feet by reacting and locking his brakes. This is 12 feet prior to impact. This opinion is a calculated value based on the road surface's coefficient of friction.

(Emphasis in original.)

¶66. The majority asserted that "Rawson failed to connect the dots between the skid marks and the existing physical evidence; thus, as found by the trial judge, his conclusion regarding causation was unreliable." Maj. Op. at ¶ 54. However, Rawson's report provided a basis for each of his findings, including specific findings based on the accident report, accident photos, the posted speed limit, Holmes's admitted speed, the normal braking value, the standard perception-reaction time, the road surface's coefficient of friction, and his personal observations of the scene.

31

¶67. I agree with the majority's assertion that "Nothing in *Daubert* requires a court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered," Maj. Op. at ¶ 53 (quoting *Watts v. Radiator Specialty Co.*, 990 So. 2d 143, 149 (Miss. 2008)). However, as evidenced by Rawson's report, there was sufficient evidence in the record to "connect the dots" of Rawson's opinion regarding the lack of skid marks, making his expert opinion reliable and admissible.

¶68. Moreover, Rawson's report was dated June 11, 2006, and his trial deposition was taken on July 3, 2006. Prior to the deposition, Holmes was on notice of Rawson's opinions and their bases. As such, Holmes could have challenged Rawson's opinions by conducting a vigorous examination of Rawson, and he could have presented contrary evidence through an expert witness of his own. *See Miss. Transp. Comm'n v. McLemore*, 863 So. 2d 31, 36 (Miss. 2003) (quoting *Daubert*, 509 U.S. at 595-96) ("Vigorous cross examination, presentations of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

¶69. However, Holmes did not attempt to challenge the bases of Rawson's opinions until his *ore tenus Daubert* motion on the first day of trial, June 25, 2008, nearly two years after Rawson's deposition had been taken. While the trial judge acted within his discretion in allowing the motion to be heard, one has to wonder why Holmes waited until trial to object to expert testimony of which he had known the bases for more than two years. *See Hyundai Motor America v. Applewhite*, __ So. 3d __, 2011 WL 448032, *5 (Miss. 2011) ("[T]he trial

judge has discretion with regard to when and how to decide whether an expert's testimony is sufficiently reliable to be heard by a jury . . . .").

¶70.    Because Rawson is an educated and experienced accident reconstructionist who possessed peculiar knowledge within his field not likely to be possessed by a layman, and his opinions were not merely subjective belief or unsupported speculation but were based on methods and procedures of science, the trial court abused its discretion in excluding Rawson's deposition in its entirety. *Hooten v. State*, 492 So. 2d at 948; *McLemore*, 863 So. 2d at 36.  Accordingly, I would affirm the Court of Appeals's reversal and remand of this issue for a new trial with the inclusion of all of Rawson's expert testimony.

**DICKINSON, P.J., AND RANDOLPH, J., JOIN THIS OPNION.**