IRVING, P.J.,
for the Court:
¶ 1. On April 10, 1998, Katherine Thompson’s home was destroyed by a fire allegedly caused by a defective satellite receiver designed, manufactured, and sold by Echostar Communications Corporation (Echostar). On November 1, 2000, Thompson and her husband, Jimmy Thompson, filed suit against Echostar alleging that it was liable for the fire be *698 cause it designed and manufactured a satellite receiver that had a propensity to overheat and catch fire.[1]
¶ 2. From July 19, 2005 to July 27, 2008, no action of record occurred in the case. On July 28, 2008, Thompson filed a supplemental designation of experts. In response, Echostar filed a motion to dismiss for failure to prosecute. The circuit court denied Echostar’s motion, but it ordered sanctions against Thompson and her attorneys. On September 27, 2010, Echostar filed a motion to exclude Thompson’s expert witness and a motion for summary judgment. The circuit court granted both motions.
¶ 3. Feeling aggrieved, Thompson appeals and argues that the circuit court erred in: (1) excluding her expert witness, (2) granting summary judgment in favor of Echostar, and (3) ordering sanctions against Thompson and her attorneys.
¶4. Because the circuit court erred in ordering sanctions against Thompson and her attorneys, we reverse and render the circuit court’s judgment as to that issue. As to the remaining issues, we affirm.
FACTS
¶ 5. The Thompsons were not at home when the fire started, and there were no witnesses to the fire. Jimmy testified during his deposition that, when they left home, the only appliances that were left on in the house were the satellite receiver and the television. Jimmy also testified that he had purchased the satellite receiver in 1990 or 1991 and that he had not had any problems with it until the fire in 1998. However, he testified that the receiver “stayed overly warm.”
¶ 6. Deputy Carl Rayfield Jr., of the Mississippi Department of Insurance/State Fire Marshal’s Office, investigated the fire. Deputy Rayfield testified that the extensive fire damage to the home prevented him from determining the fire’s exact origin. However, based on his investigation, he excluded the following as possible causes of the fire: the home’s natural gas, the breaker boxes, the stove, the hot-water heater, the clothes dryer, and defective wiring. Finally, Deputy Rayfield stated that he did not find any accelerant at the scene of the fire.
¶ 7. Thompson hired A.K. Rosenhan, a mechanical engineer and fire-protection-engineering consultant, as her expert witness. During his deposition, Rosenhan testified that he inspected the scene of the fire twice. Rosenhan stated that he had learned about the satellite receiver’s possible electrical problems from Jimmy, who had received the information from Marvin Lemley, a satellite technician. Lemley was not designated as an expert in this case. However, he offered testimony as a witness with experience beyond that of the average person in the area of electronics, having worked in the field for over fifty years.
¶ 8. Lemley testified during his deposition that he had sold and installed fifteen hundred satellite receivers over the course of twenty years. While he had only installed two satellite receivers like Thompson’s, he had serviced several hundred of them. Lemley noted that only the first generation satellite receivers had a propensity to overheat. Lemley admitted that he never worked on Thompson’s receiver, and that he did not know whether Thompson’s satellite receiver was from the first or second generation. Rosenhan testified that he reviewed the satellite receiver’s technical-service manual and con *699 firmed Lemley’s statements concerning the receiver’s propensity to overheat. However, Rosenhan admitted that he did not run any tests to verify that Thompson had been experiencing the problems that Lemley had described.
¶ 9. Rosenhan hypothesized that the satellite receiver caused the fire, but he did not test his hypothesis using Thompson’s receiver or any similar receiver. Rosen-han also admitted that he could not exclude Thompson’s television or the home’s electrical outlets as possible sources of the fire. Additionally, Rosenhan further admitted that he did not know if Thompson’s satellite receiver contained the first or second generation power supply.
1110. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

1. Exclusion of Expert Witness

¶ 11. Thompson argues that the circuit court erred in excluding Rosenhan’s opinions concerning the cause of the fire. The admission or exclusion of expert testimony is reviewed for abuse of discretion. Denham v. Holmes ex rel. Holmes, 60 So.3d 773, 783 (¶ 34) (Miss.2011). Thus, the circuit court’s decision will not be overturned unless it was arbitrary and clearly erroneous. Id. “For expert testimony to be admissible, it must be both relevant and reliable.” Id. at (¶ 36) (citing Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 592-94, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)).
¶ 12. The Mississippi Supreme Court has held that “[ejxpert testimony admitted at trial must be based on scientific methods and procedures, not on unsupported speculation or subjective belief.” Hubbard ex rel. Hubbard v. McDonald’s Corp., 41 So.3d 670, 675 (¶ 16) (Miss.2010) (citing Miss. Dep’t of Mental Health v. Hall, 936 So.2d 917, 928 (¶31) (Miss.2006)). Rule 702 of the Mississippi Rules of Evidence provides:
[A] witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
The circuit court determined that Rosen-han had failed to follow the accepted rules of fire investigation. The court also noted that Rosenhan had not tested Thompson’s receiver or any similar receiver. Additionally, the court concluded that Rosenhan had failed to use objective standards in his investigation, and his opinion was not supported by sufficient facts and data. Accordingly, the court excluded Rosenhan’s testimony.
¶ 13. The circuit court did not abuse its discretion in excluding Rosenhan’s testimony. Rosenhan provided no testimony that would have assisted the court or the ultimate trier of fact in deciding whether or not the satellite receiver caused the fire. In fact, Rosenhan admitted that he was unable to rule out alternative causes of the fire. Additionally, even though Rosenhan hypothesized that the fire began with Thompson’s satellite receiver, he never tested the receiver or any similar receiver. Rosenhan’s opinion was largely drawn from his conversations with Jimmy and was not based on scientific data. Accordingly, this issue is without merit.

2. Summary Judgment

¶ 14. Thompson contends that the circuit court erred in granting summary *700 judgment in favor of Eehostar after excluding Rosenhan’s testimony. Appellate courts review the grant or denial of summary judgment de novo. McKee v. Bowers Window & Door Co., Inc., 64 So.3d 926, 936 (¶ 27) (Miss.2011). Summary judgment is appropriate when “the pleadings, depositions, answers to interi’ogato-ries[,] and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Id. (quoting M.R.C.P. 56(c)) (footnote omitted). Moreover, “[t]he moving party has the burden of demonstrating that no genuine issue of material fact[ ] exists, and the non-moving party must be given the benefit of the doubt concerning the existence of a material fact.” Id. (quoting Covington County Sch. Dist. v. Magee, 29 So.3d 1, 4 (¶ 5) (Miss.2010)).
¶ 15. Thompson’s claim against Eehostar is a products-liability claim. Particularly, Thompson alleges that Ech-oStar designed and manufactured a defective satellite receiver. Products-liability claims are specifically governed by statute. Williams v. Bennett, 921 So.2d 1269, 1273 (¶ 13) (Miss.2006). To survive a motion for summary judgment in a products-liability case, the non-movant must show that the product was:
(1) “designed in a defective manner[”] (2) which rendered [the product] “unreasonably dangerous” to the [plaintiff]; (3) that the “defective and unreasonably dangerous condition proximately caused” the [plaintiffs] damages; (4) that the damages were not caused by an “inherent characteristic” of the [product] which “cannot be eliminated without substantially compromising the product’s usefulness or desirability” and which an “ordinary person” would recognize; (5) that [the defendant] knew or should have known of the “danger that caused the damage[”;] and (6) that “there existed a feasible design alternative that would have[,] to a reasonable probability!,] prevented the harm” without also “impairing the [product’s] utility, usefulness, practicality or desirability[.]”
McKee, 64 So.3d at 938 (¶ 31) (quoting Miss.Code Ann. § ll-l-63(a), (b), & (f) (Supp.2011)).
¶ 16. As the party requesting summary judgment, Eehostar carried the burden of persuading the circuit court that there were no genuine issues of material fact. We find that Eehostar met its burden. In its motion, Eehostar argued that Thompson could not produce evidence of a specific defect with her receiver. In support of its argument, Eehostar pointed out that neither Rosenhan nor Lemley had examined Thompson’s receiver, so neither could testify regarding the receiver’s defectiveness. Additionally, Eehostar alleged that Thompson could not produce reliable evidence that a defect in the receiver caused the fire. Although Rosenhan hypothesized that Thompson’s receiver overheated and started the fire, he admitted that he did not test his hypothesis and could not exclude alternative causes for the fire.
¶ 17. Thompson relied on Echostar’s creation of a second-generation power supply as evidence that the first-generation power supply contained defects. However, Thompson offered no evidence that the second-generation power supply was created in response to a problem with the first-generation power supply. Furthermore, she produced no evidence that her satellite receiver contained the allegedly defective first-generation power supply. Because Thompson failed to show that there were genuine issues of material fact, the circuit court did not err in granting summary *701 judgment in Echostar’s favor. This issue is without merit.

3. Sanctions

¶ 18. Thompson argues that the circuit court erred in ordering sanctions against her and her attorneys because the court lacked the authority to award sanctions and the sanctions were unreasonable. Thompson also asserts that the circuit court erred in awarding attorneys’ fees to the successful litigant.
¶ 19. Echostar filed a motion to dismiss, pursuant to Rule 41(b) of the Mississippi Rules of Civil Procedure,[2] based on Thompson’s failure to prosecute her case. Instead of dismissing her case, the circuit court assessed two types of sanctions against Thompson and her attorneys: costs and expenses associated with discovery and attorneys’ fees based on the outcome of the case. Appellate courts review a circuit court’s imposition of sanctions for abuse of discretion. Barrett v. Jones, Funderburg, Sessums, Peterson & Lee, LLC, 27 So.3d 363, 369 (¶22) (Miss.2009).
¶ 20. Thompson contends that because Rule 41(b) does not mention sanctions, the circuit court lacked the authority to impose sanctions. However, Thompson is mistaken. “A court has the inherent power to impose sanctions in order to protect the integrity of the judicial process.” Barrett, 27 So.3d at 370 (¶25) (citing Wyssbrod v. Wittjen, 798 So.2d 352, 368 (¶ 58) (Miss.2001)). Therefore, even though Rule 41(b) does not specifically mention sanctions, a court may impose lesser sanctions instead of dismissing a case for lack of prosecution. See Hoffman v. Paracelsus Health Care Corp., 752 So.2d 1030, 1034 (¶ 12) (Miss.1999). “Lesser sanctions include fines, costs, or damages against [a] plaintiff or his counsel, attorney disciplinary measures, conditional dismissal, dismissal without prejudice, and explicit warnings.” Id. at 1035 (¶ 16) (quoting Wallace v. Jones, 572 So.2d 371, 377 (Miss.1990)).
¶ 21. While the circuit court had the power to impose sanctions rather than dismissing the case, Thompson should only be required to pay the reasonable expenses that Echostar incurred as a result of her failure to prosecute the case. However, these expenses should not include the costs associated with Rosenhan’s or Hem-ley’s depositions. Thompson designated Rosenhan and Lemley as witnesses in 2002. Therefore, any delay in deposing Rosenhan and Lemley was not a result of Thompson’s delay in prosecuting the case against Echostar.
¶ 22. Thompson also argues that the circuit court erred in awarding contingent attorneys’ fees to the successful litigant. Our supreme court has never, except in cases involving punitive damages, approved an award of attorneys’ fees to the successful litigant. Stockstill v. Gammill, 943 So.2d 35, 49 (¶ 29) (Miss.2006). As there has been no imposition of punitive damages here, the circuit court could not award contingent-attorneys’ fees to Echostar. Accordingly, we reverse and render the circuit court’s judgment regarding the award of costs, expenses, and contingent-attorneys’ fees.
¶ 23. THE JUDGMENT OF THE CARROLL COUNTY CIRCUIT COURT IS AFFIRMED IN PART, AND REVERSED AND RENDERED IN PART. ALL COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE AP *702 PELLANT AND ONE-HALF TO THE APPELLEE.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, MAXWELL, RUSSELL AND FAIR, JJ„ CONCUR. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.

. On June 6, 2005, the Carroll County Circuit Court dismissed Jimmy from the case for failing to report his claims against Echostar on his bankruptcy schedules.

. Rule 41(b) reads, in pertinent part:
For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him.