MAXWELL, J.,
for the Court:
¶ 1. William Sanders filed a medical-malpractice action against Dr. Benjamin Wise-man in the Circuit Court of Lee County. After receiving discovery responses, Dr. Wiseman moved for summary judgment. He alleged the plaintiff had failed to produce sufficient expert opinions to establish a prima facie medical-negligence claim. Following a hearing, the circuit court determined no genuine issues of material fact existed and granted summary judgment in favor of Dr. Wiseman. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. On January 14, 2005, Dr. Wiseman performed surgery on Sanders to implant a spinal-cord stimulator. Approximately eight months later, Dr. Wiseman again performed surgery to remove the stimulator. On November 13, 2007, Sanders filed a medical-malpractice lawsuit against Dr. Wiseman.[1] He alleged Dr. Wiseman negligently performed the surgeries to implant and remove the stimulator. Sanders also claimed one of the leads of the stimulator broke when Dr. Wiseman removed it.[2]
¶ 3. During the discovery process, Dr. Wiseman propounded requests for admission, which asked Sanders to admit he did not have a qualified medical expert to testify that Dr. Wiseman was negligent. Sanders responded with a denial. Then, Dr. Wiseman, through interrogatories, requested the name of each expert witness Sanders expected to testify at trial. He also inquired about the subject matter on which each expert was expected to testify, the substance of the facts and opinions to which each expert was expected to testify, and a summary of the grounds for any opinions. See M.R.C.P. 26(b)(4)(A)(i). Sanders responded to the interrogatories stating that he had not yet identified an expert witness but would supplement his responses once a determination had been made.
¶ 4. After receiving Sanders’s discovery responses, Dr. Wiseman moved for summary judgment. Sanders responded and attached the sworn affidavit of Dr. Thomas West. Dr. Wiseman then filed a reply motion along with a motion to strike Dr. West’s affidavit. Shortly thereafter, Sanders filed another response, in which he argued Dr. West’s affidavit was sufficient to survive summary judgment. Sanders then supplemented his earlier interrogatory answers and identified Dr. West as his expert. However, Sanders did not answer the interrogatories that sought information about Dr. West’s proposed opinions, nor *140 did Sanders provide any indication of Dr. West’s expected testimony.
¶ 5. The circuit court held a hearing on Dr. Wiseman’s summary judgment motion. After hearing arguments from both parties, the circuit court granted both Dr. Wiseman’s motion to strike and his motion for summary judgment. The circuit court entered a written judgment reflecting its decision.[3]
¶ 6. On appeal, Sanders argues the circuit court erred in (1) striking the affidavit of Dr. West and (2) granting Dr. Wise-man’s motion for summary judgment.
STANDARD OF REVIEW
¶ 7. A trial court’s decision to grant or deny a motion to strike an affidavit will not be reversed unless there has been an abuse of discretion. Kilhullen v. Kansas City S. Ry., 8 So.3d 168, 172 (¶ 8) (Miss.2009); Smith ex rel. Smith v. Clement, 983 So.2d 285, 288, 290 (¶¶ 11, 19) (Miss.2008). When reviewing the grant or denial of a motion for summary judgment, appellate courts conduct a de novo review. Lewallen v. Slawson, 822 So.2d 236, 237 (¶ 6) (Miss.2002) (citation omitted).
DISCUSSION
I.Dr. West’s Affidavit
¶8. Sanders argues Dr. West’s expert affidavit contained a sufficient factual basis and indication of his proposed testimony to prevent summary judgment. Dr. West’s affidavit contained the following affirmations:
1. Affiant is a physician and general surgeon, licensed to practice medicine in the [sjtate of Tennessee.
2. I have reviewed the medical records of William Sanders, the Plaintiff in this action, in connection with the surgery to implant the spinal-cord stimulator and the surgery to remove the spinal-cord stimulator.
3. In the process of removing the spinal-cord stimulator, the device broke.
4. Based upon my review of the case, it is my professional opinion that Dr. Benjamin Wiseman deviated from the standard of care in his removal of the spinal-cord stimulator from William Sanders, and that the deviation from the standard of care proximately caused the injuries sustained by William Sanders.

A. Admissibility of Expert Opinion

¶ 9. The admissibility of an expert opinion is governed by Mississippi Rule of Evidence 702, which provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the ease.
Under Rule 702, a witness is required to be qualified by virtue of knowledge, skill, experience, or education, and the witness’s scientific, technical, or other specialized knowledge must assist the trier of fact. Miss. Transp. Comm’n v. McLemore, 863 So.2d 31, 35 (¶ 7) (Miss.2003). Rule 702 *141 “does not relax the traditional standards for determining that the witness is indeed qualified to speak an opinion on a matter within a purported field of knowledge.” Id. (quoting M.R.E. 702 cmt.).
¶ 10. Mississippi has adopted the federal standard set out in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and as modified in Kumho Tire Company v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), for analyzing the admissibility of expert testimony. McLemore, 863 So.2d at 35 (¶ 5). The Daubert standard is a two-pronged inquiry: “First, the [trial] court must determine that the expert [opinion] is relevant — that is, [it] must ‘assist the trier of fact’.... Next, the trial court must determine whether the proffered [opinion] is reliable.” Id. at 38 (¶ 16). Trial judges are “ ‘gate keepers’ with the responsibility of determining, in the first instance, whether an expert’s proffered opinion is both relevant and reliable.” Clement, 983 So.2d at 289 (¶ 14) (citation omitted); see also M.R.E. 702 cmt. In performing this gate-keeping responsibility, trial judges should examine the criteria set forth in Rule 702. Clement, 983 So.2d at 289 (¶ 14).
¶ 11. Additionally, DaubeH provides a list of factors for assessing reliability, including:
whether the theory or technique can be and has been tested; whether it has been subjected to peer review and publication; whether, in respect to a particular technique, there is a high known or potential rate of error; whether there are standards controlling the technique’s operation; and whether the theory or technique enjoys general acceptance within [the] relevant scientific community-
McLemore, 863 So.2d at 37 (¶ 13) (citing Daubert, 509 U.S. at 592-94, 113 S.Ct. 2786). This list of factors is not exhaustive, nor do each of the factors always apply. Id. at 36-37 (¶ 13) (citing Kumho Tire, 526 U.S. at 151, 119 S.Ct. 1167). This analysis is focused “solely on principles and methodology, not on the conclusions they generate.” Id. (quoting Daubert, 509 U.S. at 595, 113 S.Ct. 2786). The party offering an expert’s opinion must show that the opinion is based on sufficiently reliable scientific principles. See id. at 36 (¶ 11).

B. The Affidavit

¶ 12. An affidavit offered in support of or in opposition to a motion for summary judgment “shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matter stated therein.” M.R.C.P. 56(e).
¶ 13. In addition, “[a]n expert’s opinion must be supported by appropriate validation^] i.e., goqd grounds, based on what is known.” Davis v. Christian Bhd. Homes of Jackson, 957 So.2d 390, 410 (¶ 47) (Miss.Ct.App.2007) (quoting Daubert, 509 U.S. at 590, 113 S.Ct. 2786) (internal quotation marks omitted). “The facts upon which the expert bases his opinion or conclusion must permit reasonably accurate conclusions as distinguished from mere guess or conjecture.” McLemore, 863 So.2d at 35 (¶ 8) (citation omitted). Thus, an expert opinion based merely on “subjective beliefs or unsupported speculation” is insufficient, and is properly excluded. Id. at 36 (¶ 11). Affidavits consisting of nothing more than conclusory statements should be disregarded by the trial court. Estate of Deiorio ex rel. Deiorio v. Pensacola Health Trust, Inc., 990 So.2d 804, 806-07 (¶¶ 9-10) (Miss.Ct.App.2008); *142 Davis, 957 So.2d at 409-10 (¶¶ 45-47). Cf. Hubbard v. Wansley, 954 So.2d 951, 965-66 (¶ 48) (Miss.2007) (disapproving of an “almost wholly conclusory” affidavit).
¶ 14. For example, in Clement, the supreme court addressed whether the circuit court erred in granting the defendant’s motion to strike an expert’s affidavit. The case involved a claim by Amory School District (Amory) against M & W Gas Company (M & W) arising out of an explosion on a school bus. Clement, 983 So.2d at 287 (¶ 5). The accident occurred about fourteen years after M & W had installed propane fuel systems in Amory’s school busses. Id. at 286-87 (¶¶ 3, 5). M & W moved for summary judgment. It argued Amory had not sufficiently shown the bus’s propane fuel system was in the same condition as it was when installed by M & W. Id. at 287 (¶ 6). Amory’s response included an affidavit from its expert, who claimed: (1) the accident was caused by a leak in the copper tubing in the fuel system, and (2) the copper tubing in the bus at the time of the accident was the same tubing improperly installed by M & W fourteen years earlier* Id. M & W then responded with its own expert affidavit challenging Amory’s expert. Id. at (¶ 7). M & W’s expert argued essentially that there was no foundation in science for Amory’s expert’s conclusions. Id. Amory submitted no further evidence supporting its expert’s opinions. Id. at 289-90 (¶ 18). The supreme court held that the circuit court acted, within its discretion in finding Amory’s expert’s affidavit should be stricken. Id. at 290 (¶ 19).
¶ 15. In a recent medical-malpractice decision, Hill v. Mills, 26 So.3d 322 (Miss.2010),[4] the supreme court further elaborated on the analysis to be applied in the context of battling experts. The supreme court explained that one expert’s mere disagreement with the other side’s expert creates a fact issue for the jury. Id. at n. 7 (¶¶ 28-30, 34, 41). In contrast, where the defendant’s expert claims the plaintiffs expert’s opinions are not scientifically sound, the plaintiffs expert cannot then stand idly by, but must present at least some evidence showing acceptance of the opinion within the scientific community. Id. Although Hill and Clement are both instructive, we are not faced with two battling experts. Nor are we confronted with a situation where the reliability of an expert’s opinion is attacked solely on the basis that his opinion is not accepted within the scientific community. Rather, our inquiry here turns on whether Dr. West’s affidavit is insufficient because it is unsubstantiated and conclusory.
¶ 16. We addressed a similar expert affidavit in Davis. The plaintiff, Bernice Davis, filed a wrongful-death case with an underlying premises-liability claim. Specifically, Davis contended the defendant apartment complex’s failure to provide security guards and adequate lighting caused her son’s shooting death, which occurred in the complex’s parking lot. Davis, 957 So.2d at 408 (¶ 43). The only evidence of proximate cause was found in the plaintiffs expert affidavit. Id. The proposed expert, a Jackson police officer, claimed security guards would have prevented the killer from loitering and starting a fight with the deceased in the paridng lot. Id. Further, the officer attested that, based on his experience in law enforcement, poor lighting increases the chance of criminal activity. Id. Thus, he contended the lack of adequate lighting contributed to the shooting. Id. We found this factual basis insufficient to support the officer’s conclusions, and held the circuit judge did not err in disregarding the affidavit in grant *143 ing summary judgment in favor of the defendant. Id. at 409-10 (¶¶ 45, 47).
¶ 17. Here, Dr. West’s affidavit essentially contains the following assertions: (1) he was a physician and general surgeon, licensed in Tennessee; (2) he had reviewed the plaintiffs medical records pertaining to the surgeries implanting and removing the spinal-cord stimulator; (3) the device broke during the surgery; and (4) Dr. Wiseman’s deviation from the standard of care proximately caused Sanders’s injuries.
¶ 18. There is little question that Dr. West’s allegations are light on substance. The affidavit contains no information regarding the field in which Dr. West was expected to testify. It also lacks any articulation of the applicable standard of care. There is also an absence of underlying facts explaining how Dr. Wiseman allegedly deviated from the standard of care. Furthermore, the affidavit does not explain how Dr. West, a general surgeon, is qualified to testify about the standard of care applicable to an anesthesiologist and pain-management specialist such as Dr. Wiseman. We find this affidavit contains nothing more than broad conclusions, unsupported by an adequate factual basis.
¶ 19. The supreme court has explained that “when an expert’s opinion is challenged, the party sponsoring the expert’s challenged opinion [must] be given a fair opportunity to respond to the challenge. The provision of a fair opportunity to respond is part of the trial court’s gate[-]keeping responsibility.” Kilhullen, 8 So.3d at 174 (¶ 13) (quoting Clement, 983 So.2d at 290 (¶ 19)).
¶ 20. Dr. Wiseman moved for summary judgment on August 18, 2008, arguing Sanders had not produced the expert opinions required to prove his medical-negligence claim. After Sanders responded, Dr. Wiseman filed his motion to strike on October 15, 2008. In this motion, Dr. Wiseman argued that Dr. West’s affidavit was deficient because it was conclusory and contained no factual support. Multiple authorities were cited in support of Dr. Wiseman’s position. Sanders then responded by simply defending Dr. West’s affidavit and arguing it was sufficient. The record indicates the only further action taken by Sanders after Dr. Wiseman’s challenge to the affidavit was serving supplemental answers to interrogatories. These answers merely identified Dr. West as the plaintiffs expert and contained a copy of Dr. West’s curriculum vitae.[5]
¶ 21. After hearing from both sides on November 13, 2008, the trial judge found:
The purported expert affidavit of Dr. West is insufficient under Mississippi Rule[] of Evidence 702(1) for several reasons.
It does not provide the field in which Dr. West is expected to testify. It fails to establish that Dr. West knows the ... standard of care applicable to Dr. Wise-man in this case, an anesthesiologist, in the removal of a spinal-cord stimulator. The affidavit does not establish or define the applicable standard of care, but only [contains] the conclusory statement that Dr. Wiseman breached the standard of care.
The opinion of Dr. West in his affidavit is totally conclusory and fails to state facts to back it up. Moreover, the affi *144 davit of Dr. West does not establish that he is qualified by his education, training, or experience, or that he has specialized knowledge to render an opinion in this particular case.
¶ 22. We agree. Sanders had ample time and a fair opportunity to submit additional evidence of the reliability of the opinions offered in Dr. West’s affidavit. Nevertheless, he failed to provide any evidence that Dr. West’s unsubstantiated contentions were based on sound methods and principles. Under these circumstances, we find the trial court did not abuse its discretion in striking Dr. West’s affidavit.
II. Summary Judgment
¶ 23. Sanders also argues the circuit court erred in granting Dr. Wiseman’s motion for summary judgment.
¶ 24. The trial court must grant a motion for summary judgment “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56(c). Summary judgment is properly granted if the nonmoving party “fails to make a showing sufficient to establish the existence of an element essential to his case and on which he bears the burden of proof at trial.” Borne v. Dunlop Tire Corp., 12 So.3d 565, 570 (¶ 16) (Miss.Ct.App.2009) (citing Grisham v. John Q. Long V.F.W. Post, No. 4057, Inc., 519 So.2d 413, 416 (Miss.1988)). In determining whether a trial court properly granted summary judgment, we view the facts “in the light most favorable to the nonmoving party.” Robinson v. Singing River Hosp. Sys., 732 So.2d 204, 207 (¶ 12) (Miss.1999) (citation omitted).
¶ 25. To survive summary judgment, the nonmoving party must produce “significant probative evidence showing that there are indeed genuine issues for trial.” Borne, 12 So.3d at 570 (¶ 16) (quoting Price v. Purdue Pharma Co., 920 So.2d 479, 485 (¶ 16) (Miss.2006)). Furthermore, the nonmoving party “may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or [otherwise], must set forth specific facts showing that there is a genuine issue for trial.” M.R.C.P. 56(e).
¶ 26. A prima facie case for medical malpractice requires proof of the following elements:
(1) the existence of a duty by the defendant to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury;
(2) a failure to conform to the required standard; and
(3) an injury to the plaintiff proximately caused by the breach of such duty by the defendant.
Hubbard, 954 So.2d at 956-57 (¶ 12) (citation omitted). Generally, medical negligence can only be established by expert medical testimony that the defendant breached the standard of care. Gatlin v. Methodist Med. Ctr., Inc., 772 So.2d 1023, 1026 (¶ 9) (Miss.2000). Although an expert witness in a medical-negligence case is not typically required to practice the identical specialty as the doctor about whom the expert is providing an opinion, “[satisfactory familiarity with the specialty” is required. Hubbard, 954 So.2d at 957 (¶ 13).
¶ 27. The sole exception to medical-malpractice cases requiring expert testimony exists when a layperson “can observe and understand the negligence as a matter of common sense and practical experience.” Gatlin, 772 So.2d at 1026 (¶ 9) (citation omitted). This exception, often referred to as the “layman’s exception,” has regularly been applied to cases where physicians have left foreign objects in a patient’s body or given a patient the wrong *145 medication. Smith ex rel. Smith v. Gilmore Mem’l Hosp., Inc., 952 So.2d 177, 181 (¶ 11) (Miss.2007) (citations omitted). However, our supreme court has recognized that application of this exception “not only to situations where there is blatant negligence but also to situations involving judgment calls made by professionals would be overly broad.” Id.
¶ 28. Here, we are not faced with a medical-malpractice claim within the common knowledge of laypersons. It is obvious a typical layperson, unassisted by expert testimony, would be unable to determine whether Dr. Wiseman failed to exercise reasonable care and skill in the surgical removal of the spinal-cord stimulator. Therefore, we find the “layman’s exception” does not apply, and Sanders was required to produce expert testimony to prove the elements of his medical-negligence claim against Dr. Wiseman.
¶ 29. As explained above, the circuit judge did not abuse his discretion in excluding Dr. West’s affidavit. Without Dr. West’s opinion, Sanders is unable to prove the elements of his medical-malpractice claim against Dr. Wiseman. Thus, Sanders failed to meet his burden to show the presence of genuine issues of material fact, and the circuit court properly granted summary judgment in favor of Dr. Wise-man.
¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, ISHEE AND ROBERTS, JJ., CONCUR. IRVING AND BARNES, JJ„ NOT PARTICIPATING.

. Sanders also sued North Mississippi Medical Center (NMMC) and Does One through Five, alleging these defendants failed to provide proper care after the surgeries.

. The record indicates that Sanders filed a products-liability action against the manufacturer of the spinal-cord stimulator prior to filing the present medical-malpractice action.

. Pursuant to Rule 54(b) of the Mississippi Rules of Civil Procedure, the circuit judge expressly found that there was no just reason for delay and directed that the judgment was final as to Dr. Wiseman.

. A final mandate was issued in Hill on February 18, 2010.

. We note that the curriculum vitae (CV) itself is not part of the record, but the supplemental discovery response indicates that it was attached. Even if a CV was attached as Sanders contends, the record would still be devoid of a sufficient factual basis to support Dr. West’s conclusions. The record also indicates Sanders included the same affidavit from Dr. West in his supplemental interrogatory answers.